## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JAMES R. ZAZZALI as Trustee for     :
the DBSI Litigation Trust and as Trustee   :
for the DBSI Private Actions Trust,       :
                                            :
        Plaintiff,                :
                                            :
        v.                              :     Civ. No. 10-950-LPS
                                            :
DOUGLAS L. SWENSON; CHARLES      :
HASSARD; JOHN M. MAYERON;        :
THOMAS VAR REEVE; GARY           :
BRINGHURST; JEREMY SWENSON;     :
DAVID SWENSON; MICK &            :
ASSOCIATES PC LLO; BRYAN S. MICK; :
JOHN DOE 1-50; and XYZ             :
CORPORATION 1-50,               :
                                            :
        Defendants.             :

Natasha M. Songonuga, Esquire, of GIBBONS P.C., Wilmington, Delaware.
Brian J. McMahon, Esquire, Debra A. Clifford, Esquire, E. Evans Wohlforth, Jr., Esquire, and
Guy V. Amoresano, Esquire, of GIBBONS P.C., Newark, New Jersey.

      Attorneys for Plaintiff.

Chad J. Toms, Esquire, of WHITEFORD TAYLOR PRESTON LLC, Wilmington, Delaware.
Matthew A. Carvalho, Esquire, and Andrea Delgadillo Ostrovsky, Esquire, of YARMUTH
WILSDON CALFO PLLC, Seattle, Washington.

      Attorneys for Defendant Douglas Swenson.

Jami B. Nimeroff, Esquire, of BROWN STONE NIMEROFF LLC, Wilmington, Delaware.
Monte N. Stewart, Esquire, and Craig G. Taylor, Esquire, of BELNAP STEWART TAYLOR &
MORRIS PLLC, Boise, Idaho.

      Attorneys for Defendants Charles Hassard, John Mayeron, and Thomas Var Reeve.

Jami B. Nimeroff, Esquire, of BROWN STONE NIMEROFF LLC, Wilmington, Delaware.
Curtis D. McKenzie, Esquire, of MCKENZIE LAW OFFICES, PLLC, Boise, Idaho.

      Attorneys for Defendants David Swenson, Jeremy Swenson, and Gary Bringhurst.

Nella M. Bloom, Esquire, of FLASTER GREENBERG P.C., Wilmington, Delaware.
Marshall D. Bilder, Esquire, and Jason S. Feinstein, Esquire, of STERNS & WEINROTH, P.C.,
Trenton, New Jersey.

    Attorneys for Defendants Mick & Associates PC LLO and Bryan S. Mick.

---

## MEMORANDUM OPINION

March 27, 2012
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are several motions filed by Defendants:[1] (1) Motion to Dismiss

for Lack of Jurisdiction Over the Person (D.I. 69 and, hereinafter, "Jurisdiction Motion");[2]

Motion to Dismiss for Improper Venue or, alternatively, Motion to Transfer Venue (D.I. 70 and,

hereinafter, "Motion to Transfer");[3] Motion to Dismiss Counts Seven Through Thirty-Two of the

Amended Complaint (D.I. 73 and, hereinafter, "Non-RICO Motion to Dismiss");[4] Motion to

Dismiss Counts One Through Six of the Amended Complaint (D.I. 75 and, hereinafter, "RICO

Motion to Dismiss").[5] For the reasons set forth below, the Court will grant Defendants' Motion

to Transfer to the extent that it seeks to transfer this case to the District of Idaho, deny the Motion

Transfer in all other respects, and deny all remaining motions without prejudice to renew

following transfer.

## I.    **BACKGROUND**

---

[1]As detailed below, each of the pending motions was initially filed by specific defendants, and later joined in by other defendants. The defendants currently remaining in this case are: Douglas L. Swenson, Charles Hassard, John M. Mayeron, Thomas Var Reeve, Gary Bringhurst, Jeremy Swenson, David Swenson, Mick & Associates PC LLO ("Mick & Associates"), Bryan S. Mick, John Doe 1-50, and XYZ Corporation 1-50 (collectively, "Defendants").

[2]The Jurisdiction Motion was filed by Bryan S. Mick and Mick & Associates (collectively, the "Mick Defendants"). (D.I. 69)

[3]The Venue Motion was initially filed by Douglas L. Swenson. (D.I. 70) Subsequently, all other remaining named Defendants joined in this motion. (*See* D.I. 72; D.I. 85; D.I. 90)

[4]The Non-RICO Motion to Dismiss was initially filed by two parties who have since been dismissed from the case, John D. Foster and Walter E. Mott. (D.I. 73) Subsequently, all named Defendants except for the Mick Defendants joined in this motion. (*See* D.I. 78; D.I. 87; D.I. 88)

[5]The RICO Motion to Dismiss was initially filed by Farrell Bennett, who has since been dismissed from the case. (D.I. 75) Subsequently, all named Defendants except for the Mick Defendants joined in this motion. (*See* D.I. 81; D.I. 86; D.I. 89)

1

## A.    The Parties

Plaintiff, James R. Zazzali ("Plaintiff" or "Zazzali"), is the court-approved Trustee for the DBSI Estate Litigation Trust and the DBSI Private Actions Trust.[6] Plaintiff is a citizen and domiciliary of New Jersey. (D.I. 62 at ¶ 11)

Defendant Douglas Swenson is a citizen and domiciliary of Idaho. (D.I. 62 at ¶ 12) He is the former President and CEO of DBSI, an Idaho real estate investment firm. (D.I. 71 at 2)

Defendant Hassard presently resides in Utah. (D.I. 43, Ex. 1) At all times relevant to this case, Mr. Hassard was a citizen and domiciliary of Idaho. (*Id.*) Mr. Hassard served as an officer and/or director of various DBSI entities. (D.I. 62 at ¶ 13)

Defendant Mayeron is a citizen and domiciliary of Texas. (*Id.* at ¶ 14; D.I. 43, Ex. 1) Mr. Mayeron served as an officer and/or director of various DBSI entities. (*Id.*)

Defendant Var Reeve is a citizen and domiciliary of Idaho. (D.I. 62 at ¶ 18; D.I. 43, Ex. 1) Mr. Var Reeve served as an officer and/or director of various DBSI entities. (*Id.*)

Defendant Bringhurst is a citizen and domiciliary of Utah. (D.I. 50, Ex. 2 at ¶ 1) At all times relevant to this action, Mr. Bringhurst was a resident of Idaho. (*Id.* at ¶ 2) Mr. Bringhurst served as a director and/or officer of various DBSI entities. (*Id.* at ¶ 7; D.I. 62 at ¶ 19)

Defendant Jeremy Swenson is a citizen and domiciliary of Idaho. (D.I. 62 at ¶ 20) He served as an officer and/or director of DBSI entities. (*Id.*; D.I. 50, Ex. 3 at ¶ 5)

Defendant David Swenson is a citizen and domiciliary of Idaho. (D.I. 62 at ¶ 21) He

---

[6]DBSI, Inc. ("DBSI") and related entities, all of whom are Idaho entities, filed bankruptcy petitions in the United State Bankruptcy Court for the District of Delaware ("Bankruptcy Court") beginning on November 6, 2008. (D.I. 98, Ex. A) The Bankruptcy Court entered an Order of Confirmation on October 26, 2010, creating the DBSI Estate Litigation Trust and the DBSI Private Actions Trust, as well as appointing Zazzali as Trustee. (D.I. 98, Ex. B)

served as an officer and/or director of DBSI entities. (*Id.*; D.I. 50, Ex. 1 at ¶ 4)

Defendant Bryan S. Mick is a citizen and domiciliary of Nebraska. (D.I. 62 at ¶ 24) He is the President of Mick & Associates. (D.I. 69, Ex. 2 at ¶ 1)

Defendant Mick & Associates is a Nebraska corporation with its principal place of business in Nebraska. (D.I. 62 at ¶ 23) Mick & Associates has never done business in Delaware. (D.I. 69, Ex. 2 at ¶ 4)

Defendants John Doe 1-50 and XYZ Corporation 1-50 are fictitious names representing one or more persons and/or entities who were associated with or acted in concert with Defendants in connection with the alleged illegal activities. (D.I. 62 at ¶¶ 22, 25)

## B. Procedural Background

On November 5, 2010, Plaintiff, in his capacity as Trustee for the DBSI Estate Litigation Trust and as Trustee for the DBSI Private Actions Trust, filed this action against Defendants, alleging violations of federal and Idaho racketeering statutes ("RICO claims"), violations of federal and Idaho securities laws, breaches of fiduciary duties, and other common law violations. (D.I. 1) Plaintiff filed a First Amended Complaint (D.I. 62 and, hereinafter, the "Amended Complaint") on March 17, 2011. The pending motions were all filed on May 2, 2011. The parties completed briefing on these motions on July 11, 2011. The Court held argument on the pending motions on November 9, 2011. (*See* Motions Hr'g Tr., Nov. 9, 2011 (D.I. 142) (hereinafter "Tr."))

## II. DISCUSSION

### A. Venue

Defendants ask the Court to dismiss this case on the grounds that the District of Delaware

3

is an improper venue. (*See* D.I. 70) Plaintiff argues that Defendants are precluded from challenging venue due to collateral estoppel and res judicata. (D.I. 99 at 6-7) Specifically, Plaintiff argues that Defendants' venue challenge is impermissible because the Bankruptcy Court's Confirmation Order requires venue within Delaware for all actions brought on behalf of the DBSI Private Litigation Trust and DBSI Private Actions Trust. (*Id.* at 6)

Defendants' venue challenge is not barred by collateral estoppel. Under the doctrine of collateral estoppel, a party is precluded from re-litigating an issue if, among other requirements, "the identical issue was decided in a prior adjudication." *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 573 n.10 (3d Cir. 2002). The Confirmation Order only relates to the Bankruptcy Court's retention of jurisdiction over all actions brought on behalf of the DBSI Private Litigation Trust and DBSI Private Actions Trust. (*See* D.I. 98, Ex. D, Part 4 at 138-39) The Confirmation Order does not address the issue of venue. Because the Bankruptcy Court did not decide the issue of venue, collateral estoppel is not applicable.

Nor is Defendants' venue challenge barred by res judicata. Res judicata, or claim preclusion, prevents a party from asserting claims that were or could have been brought in a prior proceeding. *See, e.g., In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) ("The doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought."). But Defendants could not have brought a challenge to this Court's venue over this action until a complaint was filed in this Court. *See Albright v. W.L. Gore & Assocs., Inc.*, 2002 WL 1765340, at *3 (D. Del. July 31, 2002). Thus, the doctrine of res judicata is inapplicable.

Therefore, the Court must now turn to whether the District of Delaware is a proper venue

for this case.[7] Plaintiff alleges that Defendants violated the Securities Exchange Act of 1934, 15 U.S.C. § 78 *et. seq.* (the "Exchange Act"). Under the Exchange Act, venue is proper in any district "(1) in which any act or transaction constituting the violation occurred, or in which the defendant (2) is found, (3) is an inhabitant or (4) transacts business." *Jacobs v. Hanson*, 464 F. Supp. 777, 782 (D. Del. 1979); *see also* 15 U.S.C. § 78aa.

Plaintiffs contend that venue is proper pursuant to the first of these bases. The first "basis for venue requires but one act within the forum district which represents more than an immaterial part of the allegedly illegal events." *Southmark Prime Plus, L.P. v. Falzone*, 768 F. Supp. 487, 488 (D. Del. 1991) (internal quotation marks omitted). The single act "does not in itself have to be illegal." *Id.*

The Amended Complaint alleges that, in furtherance of their scheme to commit securities fraud, the Non-Mick Defendants[8] purposefully and intentionally caused fraudulent communications to be transmitted to potential Delaware investors. (D.I. 62 at ¶ 49) Specifically, the Amended Complaint alleges that, at the "direction and behest" of the Non-Mick Defendants, DBSI reached out to one Delaware investor by phone on many occasions and "sent voluminous amounts of investment information to her at her Delaware address." (*Id.* at ¶ 47) Exhibit D to the Amended Complaint indicates that Agnes Richardson, a resident of Dover, Delaware was an investor in the tenant-in-common funds that Defendants promulgated materials about through

---

[7]In assessing whether venue within the District of Delaware is proper, both parties stated that the Court could consider any relevant evidence in the record and is not limited solely to the face of the Amended Complaint. (*See* Tr. at 15, 46)

[8]The "Non-Mick Defendants" are Douglas L. Swenson, Charles Hassard, John M. Mayeron, Thomas Var Reeve, Gary Bringhurst, Jeremy Swenson, David Swenson, John Doe 1-50, and XYZ Corporation 1-50.

5

DBSI. (*See* D.I. 62, Ex. D) Thus, Plaintiff has sufficiently linked the alleged dissemination of false and misleading materials to a Delaware investor, who was an alleged victim of the fraud. Plaintiff has alleged that investment in the tenant-in-common funds was material and essential to the overarching fraud scheme. (*See* D.I. 62 at 44-57) "The case law uniformly supports the proposition that the alleged transmission of the misleading materials into the district is a venue-sustaining act under § 78aa." *In re AES Corp. Secs. Litig.*, 240 F. Supp. 2d 557, 559 (E.D. Va. 2003); *see also Oxford First Corp. v. PNC Liquidating Corp.*, 372 F. Supp. 191, 197 (E.D. Pa. 1974) ("Venue will be sustained in a securities case where a defendant causes false or misleading information to be transmitted into a judicial district, even if the defendant never has been physically present in that district."). Thus, the District of Delaware is an appropriate venue for the securities fraud claims asserted against the Non-Mick Defendants.

Based on the Court's finding that venue is proper for the securities fraud claims, the Court also finds that this District is an appropriate venue for the RICO claims asserted against the Non-Mick Defendants. This is because the RICO claims are an alternative avenue of relief to remedy the same wrongs asserted in Plaintiff's securities fraud claims. *See Beattie v. United States*, 756 F.2d 91, 100 (D.C. Cir. 1984) (stating where two separate claims "amount to only one cause of action with two grounds for relief, proper venue as to one federal ground will support adjudication of both grounds"), *overruled on other grounds by Smith v. United States*, 507 U.S. 197 (1993); *see also High River P'ship v. Mylan Labs., Inc.*, 353 F. Supp. 2d 487, 493 (M.D. Pa. 2005) (stating that, under doctrine of pendent venue, "where claims arise out of the same operative facts" venue exists over both claims, "even if venue over the pendent claim would not otherwise be proper").

6

The Amended Complaint alleges RICO violations and securities fraud claims which arise from the same common nucleus of operative fact – namely, Defendants' fraudulent representations to potential investors. (*Compare* D.I. 62 at ¶ 630 (alleging RICO violations due to Defendants acting with "design and purpose of fraudulently marketing securities and real estate, obtaining money by false representations") *with id.* at ¶ 835 (alleging securities fraud because Defendants "saw the false PPMs and financial statements [which were sent to investors], knew they were false, and allowed them to be issued anyway")) Accordingly, pendent venue in the District of Delaware is appropriate for the RICO claims asserted against the Non-Mick Defendants.

The Non-Mick Defendants did not raise any specific venue arguments pertaining to any of the other counts of the Amended Complaint.[9] Therefore, the Non-Mick Defendants failed to meet their burden of demonstrating with respect to these other counts that venue in the District of Delaware is improper. *See Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982) (stating movant has burden of proving venue is not proper in selected forum). In any event, pendent venue in this District is also appropriate for all of the other causes of action asserted against the Non-Mick Defendants because these causes of action, too, arise from the same common operative facts as the securities fraud and RICO counts.

The Court next addresses whether venue is proper with respect to the Mick Defendants. "Where there is more than one defendant, proper venue must be shown for each defendant." *Kunkler v. Palko Mgmt. Corp.*, 992 F. Supp. 780, 781 (E.D. Pa. 1998).

---

[9]The Court finds it unnecessary to discuss each of the other individual counts of the Amended Complaint in this Memorandum Opinion.

7

The Mick Defendants are not accused of committing securities fraud or RICO violations. Rather, they are alleged to have aided and abetted the Non-Mick Defendants in committing RICO violations and securities fraud. (*See* D.I. 62 at ¶¶ 768-69) "It is well established that . . . venue is proper as to all defendants involved in . . . [an] alleged securities fraud even if some of those defendants were not directly involved in the venue-supporting act or transaction within the district." *In re Towner Petroleum Co. Secs. Litig*, 1986 WL 290, at *12 (E.D. Pa. June 30, 1986); *see also Southmark*, 768 F. Supp. at 489 n.3 (discussing "co-conspirator venue"[10] in securities fraud cases and collecting cases recognizing this theory of venue). Here, the Amended Complaint alleges that the Mick Defendants "knowingly participated in the breaches of fiduciary duty" of the Non-Mick Defendants. (D.I. 62 at ¶ 768) The breaches of fiduciary duties of the Non-Mick Defendants involve their actions taken in furtherance of violating the Exchange Act. Thus, venue in the District of Delaware is appropriate with respect to the Mick Defendants under the co-conspirator theory of venue. Additionally, the Court can exercise pendent venue over the negligence claims asserted against the Mick Defendants because these claims arise out of the same common nucleus of operative fact – namely, the Mick Defendants' assistance with the Non-Mick Defendants' fraudulent scheme.

## B.    Transfer

Having determined that venue is proper within the District of Delaware for all asserted causes of action against all remaining Defendants, the Court will now address Defendants'

---

[10]Although referred to as "co-conspirator venue," an actual conspiracy does not need to be alleged. *See generally Hill v. Turner*, 492 F. Supp. 61, 63 (M.D. Pa. 1980) (finding venue under co-conspirator theory in securities fraud case where co-defendant was alleged to have "aid[ed] and abet[ted]" other defendant in carrying out securities fraud).

8

request to transfer this case to the District of Idaho.

## Section 1404(a)

Defendants' request to transfer arises under 28 U.S.C. § 1404(a), which provides: "For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

## Appropriateness of the Transferee Venue

In determining whether transfer is appropriate, the Court must first determine whether this action could have been brought in the proposed transferee venue, which here is the District of Idaho. "The party moving for transfer bears the burden of proving that the action properly could have been brought in the transferee district in the first instance." *Mallinckrodt Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 356 (D. Del. 2009) (internal citations omitted). The parties do not dispute that Plaintiff's claims could have been brought in the District of Idaho.

## Applicable Legal Standards

As the Third Circuit has explained, Section 1404(a) "was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The Third Circuit has also emphasized that "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879. As a result, "a transfer is not to be liberally granted." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation marks omitted).

Consequently, the burden rests squarely on the party seeking a transfer "to establish that a balancing of proper interests weighs in favor of the transfer." *Id.*; *see also Jumara*, 55 F.3d at

9

879. That burden is a heavy one: "unless the balance of convenience of the parties is ***strongly*** in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25 (internal quotation marks omitted) (emphasis in original); *see also CNH Am. LLC v. Kinzenbaw*, 2009 WL 3737653, at \*2 (D. Del. Nov. 9, 2009). It follows that "transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer." *Angiodynamics, Inc. v. Vascular Solutions, Inc.*, 2010 WL 3037478, at \*2 (D. Del. July 30, 2010) (internal citations omitted); *see also Illumina, Inc. v. Complete Genomics, Inc.*, 2010 WL 4818083, at \*2 (D. Del. Nov. 9, 2010).

Unless the defendant "is truly regional in character" – that is, it operates essentially exclusively in a region that does not include Delaware – transfer is often inappropriate. *See Praxair, Inc. v. ATMI, Inc.*, 2004 WL 883395, at \*1 (D. Del. Apr. 20, 2004). When transfer is sought by a defendant with operations on a national or international scale, that defendant "must prove that litigating in Delaware would pose a unique or unusual burden on [its] operations." *L'Athene, Inc. v. EarthSpring LLC*, 570 F. Supp. 2d 588, 592 (D. Del. 2008) (internal citations and quotation marks omitted); *see also In re TCW/Camil Holding, L.L.C.*, 2004 WL 1043193, at \*1 (D. Del. Apr. 30, 2004).[11]

---

[11]*See generally Intel v. Broadcom*:

> [Defendant] is a multi-billion dollar company that does business on an international scale. Furthermore, the conveniences of modern travel and communication technology have made it more difficult to argue that litigating in a particular forum is inconvenient for the parties and witnesses. Therefore, to meet its burden [defendant] must establish that litigating this case in Delaware will pose a unique or unusual burden on [its] business operations. It has not done so.

10

"A motion to transfer may also be granted if there is a related case which has been first filed or otherwise is the more appropriate vehicle to litigate the issues between the parties." *Praxair*, 2004 WL 883395, at \*1; *see also generally Mallinckrodt*, 670 F. Supp. 2d at 357-58 ("In an instance where related litigation in a transferee forum involves the same parties, similar technologies, and a common field of prior art, this Court has previously held that transfer is appropriate in the interests of justice.").

Given the necessarily individualized, fact-specific, case-by-case nature of a decision whether to transfer venue, it is inevitable that the multitude of transfer opinions – including the many issued in this District – will not entirely harmonize with one another. As Chief Judge Sleet has explained:

> By definition, a transfer analysis is a thoughtful weighing of interests. And, as an exercise of discretion, this process is, at least to some extent, subjective.
>
> Thus, while the Court can look to precedent for guidance, it reminds the parties that the weight which one court might afford to one factor on one day might very well differ from the weight afforded to that same factor by a different court, located in a different district, presiding over a different litigation, between different parties, concerning a different cause of action, involving different facts, different witnesses, and different documents on a different day.

*Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 208 (D. Del. 1998). It bears emphasis that such differences may also be evident even among different judges sitting in the same District.

## The *Jumara* Factors

Since two proper venues have been identified, the Court must balance the appropriate

---

167 F. Supp. 2d 692, 706 (D. Del. 2001) (internal quotation marks and citations omitted).

considerations and determine whether, under the particular facts of this case, the request to transfer venue should be granted. The Third Circuit has observed that in undertaking such an analysis "there is no definitive formula or list of the factors to consider." *Jumara*, 55 F.3d at 879. Instead, courts must analyze "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id.*

Nevertheless, the Third Circuit has also identified a set of private interest and public interest factors for courts to consider. *See id.* at 879-80. The private factors to consider include: (1) "the plaintiff's forum preference as manifested in the original choice;" (2) "the defendant's preference;" (3) "whether the claim arose elsewhere;" (4) "the convenience of the parties as indicated by their relative physical and financial condition;" (5) "the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;" and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." The public interest factors to consider include: (1) "the enforceablity of the judgment;" (2) "practical considerations that could make the trial easy, expeditious, or inexpensive;" (3) "the relative administrative difficulty in the two fora resulting from court congestion;" (4) "the local interest in deciding local controversies at home;" and (5) "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (internal citations omitted).

## Private Interest Factors

### Plaintiff's choice of forum

"It is black letter law that a plaintiff's choice of a proper forum is a paramount

12

consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (internal citations and quotations omitted). That is, "courts normally defer to a plaintiff's choice of forum." *Jumara*, 55 F.3d at 880. Indeed, "[t]he deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason." *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001) (internal citations omitted).

Plaintiff has clearly manifested its preference for Delaware as a forum by filing suit here. In support of the decision to file in Delaware, Plaintiff cites the DBSI bankruptcy cases presently pending in the Bankruptcy Court, Defendants' decision to file the DBSI bankruptcy in Delaware, and the fact that Plaintiff maintains an office in Delaware. (D.I. 99 at 16; Tr. at 39)

Nevertheless, Delaware is not the "home turf" for Plaintiff, who is a citizen and domiciliary of New Jersey. (*See* D.I. 62 at ¶ 11) "The movant's burden in overcoming the plaintiff's choice of forum is somewhat lessened where, as here, the plaintiff has not filed suit in its 'home turf.'" *Angiodynamics*, 2010 WL 3037478, at *2. However, "if the plaintiff's choice of forum relates to its legitimate, rational concerns then the plaintiff's choice of forum is still accorded substantial weight." *Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 764 (D. Del. 1991).

Here, Plaintiff's decision to file in Delaware relates to legitimate and rational concerns. Thus, Plaintiff's choice of Delaware as its preferred forum is entitled to "significant deference." *Mallinckrodt*, 670 F. Supp. 2d at 356.

### Defendants' forum preference

All of the Defendants prefer an alternative forum, the District of Idaho. Defendants assert

13

that all material witnesses are located in Idaho and that litigating within the District of Delaware imposes a significant financial burden on them. (D.I. 71 at 11) Defendants present legitimate and rational reasons for their preference of an alternative forum. The specifics of the bases for this preference are addressed further below. Under Third Circuit law, Defendants' preference for an alternative forum is not given the same weight as Plaintiff's preference.

### Location of operative events

Plaintiff asserts that Delaware was the center of the fraud alleged in the Amended Complaint, as 300 DBSI entities and over 2500 special purpose entities were registered in Delaware to further the fraudulent plan. (D.I. 99 at 17) Plaintiff also argues that a "significant amount of misleading communications" were directed at Delaware investors. (*Id.*) Additionally, several of the defrauded investors are Delaware residents. (*See* Tr. at 34-35, 37) Defendants disagree and contend that the situs of Plaintiff's claims is Idaho, as DBSI was headquartered in and operated out of Idaho, offering materials and disclosure documents were mailed from Idaho, and most of the events relevant to the Amended Complaint occurred in Idaho. (D.I. 71 at 10)

The Court concludes that the events giving rise to this lawsuit occurred both in Idaho and Delaware. Thus, on balance, this factor is neutral.

### Convenience of the parties

The next factor to be considered is "the convenience of the parties as indicated by their relative physical and financial condition." *Jumara*, 55 F.3d at 879. Defendants argue that litigation in Delaware would be unduly burdensome and expensive because none of them reside in or near Delaware; instead, they live or reside in Idaho, Nebraska, Utah, and Texas. (D.I. 62 at ¶¶ 12-24; D.I. 71 at 11) Plaintiff responds that travel and litigation costs must have been

14

contemplated by Defendants when they made the decision to file for bankruptcy in Delaware. (D.I. 99 at 17) Plaintiff also states that he will incur additional expenses if he and his counsel have to travel to Idaho to litigate the case. (D.I. 99 at 17)

The Court finds Plaintiff's arguments unavailing. The individual Non-Mick[12] Defendants in this action are being sued in their individual capacities as former officers and directors of DBSI entities. The decision of business organizations to file for bankruptcy in Delaware does not tell one much about the very different inquiry of whether Delaware is also a convenient forum in which to litigate the causes of action asserted against individuals who may have participated in the corporate decision.[13] Moreover, Plaintiff and Defendants are not necessarily in equal positions when it comes to bearing litigation expenses: Plaintiff has the assets of two trusts at his disposal to pay the costs, while the majority of the individual Defendants are in a weak financial position. (*See* D.I. 90, Ex. 1 at ¶ 5; *id.*, Ex. 2 at ¶ 7; *id.*, Ex. 3 at ¶ 5; D.I. 43, Ex. 1; D.I. 50, Ex. 1 at ¶ 8; *id.*, Ex. 2 at ¶ 11; *id.*, Ex. 3 at ¶ 11) The disparity in resources makes it more inconvenient for Defendants to litigate in Delaware than it is for Plaintiff to travel to Idaho.

In sum, this factor weighs in favor of transfer.

### Convenience for the witnesses

The next factor is "the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. "[I]n reviewing a motion to transfer, courts frequently look to the availability of witnesses as an

---

[12]The Mick Defendants are not parties to the bankruptcy action and were not involved in the DBSI entities' decisions to file for bankruptcy in Delaware.

[13]The affidavits of numerous Defendants indicate that they were not involved in the decision to file for bankruptcy in Delaware. (*See* D.I. 43, Ex. 1; D.I. 50, Ex. 1 at ¶ 7; *id.*, Ex. 2 at ¶ 10; *id.*, Ex. 3 at ¶ 10)

important factor, as it can be relevant to protecting a defendant's opportunity to put on its case with witnesses who will appear in person at the trial." *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 569 (D. Del. 2001); *see also id.* at 574 ("The court does have an interest in seeing that a plaintiff's choice of a forum does not deprive a defendant of its ability to put on a defense that effectively communicates the matters in issue to the judge and the jury.").

The Court agrees with Chief Judge Sleet, who held that the weight to be accorded to concerns about convenience for the witnesses varies depending on the type of witness at issue:

> Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial. Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies (especially in an action for patent infringement) because they are usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any. Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis.

*Affymetrix*, 28 F. Supp. 2d at 203 (internal citations and quotation marks omitted). With respect to the last category – fact witnesses with first-hand knowledge – the Court should be particularly concerned not to countenance undue inconvenience to third-party witnesses, who have no direct connection to the litigation. *See id.* (explaining that non-party fact witnesses weigh heavily in analysis); *see also Headon v. Colo. Boys Ranch*, 2005 WL 1126962, at *7 (E.D. Pa. May 5, 2005) (noting that convenience of non-party witnesses is "perhaps the most important factor"); 8 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 3851 (3d ed. 2008) ("Often cited as the most important factor in passing on a motion to transfer

16

under Section 1404(a) of Title 28 of the United States Code, and the one most frequently mentioned by the courts, . . . is the convenience of witnesses, most particularly nonparty witnesses who are important to the resolution of the case.").

Here, it appears that the overwhelming majority of material non-party witnesses reside in Idaho. (*See* D.I. 71, Ex. 2 at ¶ 2) Plaintiff has not pointed to any material non-party witnesses who reside in or near Delaware. The risk of a case going to trial and having crucial witnesses outside of the court's subpoena power who refuse to testify is one faced by all parties to a case. *See Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 484 (D. Del. 2011). Here, where none of the material non-party witnesses are within this Court's subpoena power and almost all of the material non-party witnesses are within the proposed transferee court's subpoena power, this factor weighs in favor of transfer.

### Location of relevant evidence

Next the Court considers "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. "[R]ecent technological advances have reduced the weight of this factor to virtually nothing." *Affymetrix*, 28 F. Supp. 2d at 208 (D. Del. 1998); *see also Nihon Tsushin Kabushiki Kaisha v. Davidson*, 595 F. Supp. 2d 363, 372 (D. Del. 2009) (same). In particular, "[w]ith new technologies for storing and transmitting information, the burden of gathering and transmitting documents 3,000 miles is probably not significantly more than it is to transport them 30 miles." *ADE Corp.*, 138 F. Supp. 2d at 571; *see also Cypress Semiconductor*, 2001 WL 1617186, at *3 ("Advances in technology have significantly lessened the burden of litigating in a distant district. These technologies have shortened the time it takes to transfer information, reduced the bulk or

size of documents or things on which information is recorded . . . and have lowered the cost of moving that information from one place to another.") (internal citations and quotation marks omitted).

Initially, Defendants conceded that this factor was neutral (*see* D.I. 71 at 12; Tr. at 18); however, they changed their position in a subsequent letter (*see* D.I. 128). The Court finds that mere existence of books and records which are not in electronic form does not change the fact that such materials can be scanned and produced at trial in either forum if necessary. Moreover, Plaintiff offered evidence of electronic databases of documents that were deemed important and were produced in response to prior requests. (*See* D.I. 129) Accordingly, this factor is neutral.

## Public Interest Factors

### Enforceability of judgment

There is no suggestion that a judgment would be unenforceable in either the District of Delaware or the District of Idaho. Defendants admit this factor is neutral. (D.I. 71 at 12)

### Practical considerations

The Court also takes account of "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. There is no strong evidence that either forum would make the trial more easy, expeditious, or inexpensive for all parties. Indeed, Delaware makes the trial easier for Plaintiff, and Idaho would make the trial easier for Defendants. Therefore, this factor is neutral.

### Administrative difficulties of getting case to trial

Next the Court turns to the "relative administrative difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879. Although Plaintiff acknowledges that this

18

Court manages a heavy caseload (*see* D.I. 99 at 18), Defendants have not provided any evidence to show that the District of Idaho is less congested. (*See* Tr. at 19 (wherein Defendants' counsel indicates that he does not "have any statistics [he] can cite" regarding congestion of District of Idaho)) Thus, this factor is neutral.

### Local interests in dispute

Defendants argue that Idaho has a stronger interest in deciding this matter because DBSI was a major Idaho employer, the conduct occurred mostly in Idaho, and resolution of the case may have an impact on the residents and businesses of Idaho, as well as development of Idaho law. (D.I. 71 at 13) Plaintiff responds that Delaware has a strong interest in deciding this dispute because Defendants took advantage of Delaware law to create Delaware entities to further the alleged fraud and Delaware investors were injured in the process. (D.I. 99 at 18)

Delaware is usually found to have an interest when a lawsuit is brought against or by its citizens. *See, e.g.*, *Simms v. Thomson Reuters Tax & Accounting, Inc.*, 2011 WL 4501225, at *7 (D. Del. Sep. 28, 2011) (finding that Delaware had interest in adjudicating claim brought by Delaware resident); *Tradimpex Egypt Co. v. Biomune Co.*, 777 F. Supp. 2d 802, 810 (D. Del. 2011) ("Delaware, too, has a local interest, in that one of its citizens – Biomune, a Delaware corporation – is alleged to have breached a contract.").

The instant case was brought against individuals residing outside of Delaware and was filed by a New Jersey citizen; thus, Delaware's interest in the lawsuit is somewhat reduced. While several Delaware residents were injured by the alleged fraud, the fraud itself was perpetrated out of the Idaho headquarters by persons having no direct connections to Delaware.

Accordingly, this factor weighs slightly in favor of transfer.

### Public policy[14]

Plaintiff argues that the interests of justice favor litigation of related actions in the same venue, and that the existence of related cases is dispositive even when all other factors favor a different result. (D.I. 125 at 2) Plaintiff provided a table of cases currently pending within this District and before the Bankruptcy Court.[15] (*See id.* at 4-5) Defendants respond that the interests of justice alone do not outweigh all other factors and that all other related cases are, in fact, indicative of Plaintiff's choice of forum rather than public interest. (D.I. 128)

The Court agrees with Plaintiff that having one court decide related cases is an important public policy factor in the analysis. *See Montgomery v. Schering-Plough Corp.*, 2007 WL 614156, at *3 (E.D. Pa. Feb. 22, 2007) ("The pendency of a related case in the proposed transferee forum is a powerful reason to grant a motion to transfer."). However, Plaintiff failed to cite any precedent assigning determinative weight to the pendency of related cases in the same district (and the Court has been unable to find any such authority). Indeed, in the district court cases from within the Third Circuit cited by Plaintiff, the courts considered whether there were pending related cases in either venue *and* weighed the other factors. *See Schlenker v. Immucor,*

---

[14]The parties initially agreed that the public policy factor was aligned with the local interest factor. (*See* D.I. 71 at 13; D.I. 99 at 18) However, on the eve of oral argument Plaintiff submitted a letter arguing that the public policy factor weighed strongly against transfer. (*See* D.I. 125) The Court permitted Defendants to file a responsive letter and Plaintiff to file a final reply letter. (*See* D.I. 128; D.I. 129) The Court has considered these letters.

[15]Review of the list of cases pending in this District shows a total of twenty-two cases, twelve of which are pending in the Bankruptcy Court before Judge Walsh, who presided over the DBSI bankruptcy proceedings. Five of the ten cases pending in the District Court are assigned to the undersigned judge. Review of the dockets for these five related cases shows that they are brought against legal counsel, auditors, and investment advisers of DBSI and that all of the cases are in their early stages. The same appears to be generally true for the other related cases pending before other judges in this District.

*Inc.*, 2009 WL 5033972, at \*3-5 (E.D. Pa. Dec. 22, 2009) (considering related pending cases and weighing *Jumara* factors); *Blender v. Sibley*, 396 F. Supp. 300, 302-05 (E.D. Pa. 1975) (stating that pendency of related case in transferee venue was "additional" factor).

The Court recognizes that the progression to date of the large DBSI bankruptcy matter in the Bankruptcy Court has involved an enormous expenditure of judicial resources by this District. This fact is not, however, dispositive. Plaintiff's contention that "[t]he District of Delaware, through its Bankruptcy Court spent years learning the intricacies of the DBSI financial disaster" is far from decisive, given that Judge Walsh's undoubted knowledge cannot simply be "imputed" to all other judges in the District. (D.I. 125 at 3; *see* D.I. 128 at 2)

Additionally, the Court recognizes that Idaho has a public policy interest in having this matter adjudicated in its courts because DBSI was an Idaho employer and resolution of this case may impact Idaho residents and the development of Idaho law. The Court also agrees with Defendants that discovery efforts can be coordinated by Plaintiff regardless of where the related cases are pending.

In sum, this factor is neutral.

**Judge's familiarity with state law in diversity cases**

Only five of thirty-two counts of the Amended Complaint are based on federal law. (*See* D.I. 62) Seven counts are explicitly based on Idaho code provisions, and twenty-two counts are based on common law – most likely, Idaho law. (*See id.*; D.I. 71 at 13) Although there is no reason to believe that this Court is unable to render an informed ruling under Idaho law, a district judge in the District of Idaho undoubtedly has more frequent occasion to consider Idaho law. Thus, the Court concludes that a judge within the District of Idaho will be more familiar with

Idaho law. Accordingly, this factor weighs in favor of transfer.

**Defendants Have Proven the Factors Strongly Favor Transfer**

Overall, the only interest that weighs against transfer is Plaintiff's choice of forum. The following interests weigh in favor of transfer: Defendants' forum preference, convenience of the parties, convenience of the witnesses, local interests in dispute, and judge's familiarity with state law. All of the other factors, such as location of operative events, location of evidence, enforceability of a judgement, practical considerations, administrative difficulties, and public policy, are neutral or irrelevant. Considering all of the factors and recognizing the appropriate weight to be accorded to each, the Court concludes that the Defendants have overcome the strong presumption in favor of not disturbing Plaintiff's choice of forum and have demonstrated that transfer to the District of Idaho is appropriate.

## III.    CONCLUSION

An appropriate Order follows.